JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States inSeptember 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Natalie Munroe

**DEFENDANTS**
Central Bucks School District; N. Robert Law; and Abram Lucabaugh

**(b)** County of Residence of First Listed Plaintiff    Bucks Co.
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Bucks Co.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) *Attorneys (Firm Name, Address, and Telephone Number)*
Stanley B Cheiken, 261 Old York Road, Suite 503, Jenintown, PA 19046
215-572-8600

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983
Brief description of cause:
First Amendment Retaliation Case

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $   5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                           DOCKET NUMBER

DATE   6/21/12
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:_____ 1226 Irma Road, Warminster, PA 18974

Address of Defendant:_____ 20 Welden Drive, Doylestown, PA 18901

Place of Accident, Incident or Transaction:_____ Doylestown, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)          Yes☐  No☑

Does this case involve multidistrict litigation possibilities?          Yes☐  No☑

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes☐  No☑

CIVIL: (Place  in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I,  Stanley B. Cheiken, Esquire _____, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: 6/21/12 _____    _____    62106 _____
                                 Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/21/12 _____    _____    62106 _____
                                 Attorney-at-Law              Attorney I.D.#

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | |
|---|---|
| NATALIE MUNROE., | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **No.** |
| CENTRAL BUCKS SCHOOL DISTRICT, ET AL., | |
| Defendants. | **JURY TRIAL DEMANDED** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( x )

| | | |
|---|---|---|
| 6/21/12 | Stanley B. Cheiken | |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| (215) 572-8600 | (215) 572-7838 | scheiken@earthlink.net |
| **Telephone** | **Fax Number** | **Email Address** |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIE MUNROE,<br>1226 Irma Road<br>Warminster, PA 18974,<br><br>          Plaintiff,<br><br>          v.<br><br>CENTRAL BUCKS SCHOOL DISTRICT<br>20 Welden Drive<br>Doylestown, PA 18901,<br><br>          -and-<br><br>N. ROBERT LAWS<br>SUPERINTENDENT OF SCHOOLS<br>CENTRAL BUCKS SCHOOL DISTRICT<br>40 John Dyer Way<br>Doylestown, PA 18902,<br><br>          -and-<br><br>ABRAM LUCABAUGH<br>PRINCIPAL<br>CENTRAL BUCKS HIGH SCHOOL EAST<br>7 Timber Brook Drive<br>Quakertown, PA 18951,<br><br>          Defendants. | **CIVIL ACTION**<br><br>**NO.**<br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiff Natalie Munroe, by and through undersigned counsel, hereby brings this

Complaint against defendants Central Bucks School District, N. Robert Laws, and Abram

Lucabaugh, and avers as follows:

### PARTIES

1.     Plaintiff Natalie Munroe ("Munroe") is an adult individual and a citizen of the

Commonwealth of Pennsylvania residing at 1226 Irma Road, Warminster, PA 18974.

2.     Defendant Central Bucks School District (hereinafter the "School District") is organized and existing as a political subdivision under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, the School District was responsible for the education of approximately 20,000 students and operated 15 elementary schools, 5 middle schools and three high schools, including Central Bucks High School East in Doylestown, PA. The School District's administrative offices are located at 20 Welden Drive, Doylestown, PA.

3.     Defendant N. Robert Laws ("Laws") is an adult individual and a citizen of the Commonwealth of Pennsylvania residing therein at the address set forth in the caption. At all times relevant hereto, defendant Laws has been the Superintendent of Schools of the School District.

4.     Defendant Abram Lucabaugh ("Lucabaugh") is an adult individual and a citizen of the Commonwealth of Pennsylvania residing therein at the address set forth in the caption. At all times relevant hereto, defendant Lucabaugh has been the Principal of Central Bucks High School East.

## JURISDICTION

5.     Munroe invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1331 (Federal Question Jurisdiction); and 28 U.S.C. §1343 (Civil Rights).

## VENUE

6.     Venue in this action lies in this judicial district, pursuant to 28 U.S.C. §1391(b), the events giving rise to Munroe's claims having occurred herein.

## FACTS

7.     In 2006, Munroe was hired by the School District as an English Teacher at

2

Central Bucks East High School.

8.    At all times relevant hereto, Munroe performed her job in an excellent fashion.

9.    In 2010, Munroe received tenure.

10.    Prior to the events giving rise to this lawsuit, Munroe received excellent feedback and performance evaluations.

11.    Indeed, in June 2008, defendant Lucabaugh wrote a letter of reference in support of Munroe's application to a Master's in Education program in which he stated, *inter alia*:

> Over the course of the last two years, I had a chance to work with Natalie as a direct supervisor of the English department. As a classroom teacher, Natalie is fantastic. She is articulate, creative, well-versed in her subject matter, and particularly astute in dealing with a wide variety of learning styles, demonstrating an ability to motivate even the most reluctant of learners; additionally, she not only holds herself to high expectations, but fully expects her students and colleagues to reflect the meticulous, conscientious manner in which she approaches each aspect of her chosen profession.
>
> Natalie Munroe is a woman of utmost integrity, character, and intelligence. She is a consummate educator with a sparkling future, and a woman whom I respect both personally and professionally. I am honored to know and work with Natalie, and am absolutely certain she will represent your ideals of what a graduate student at Gratz should be.

12.    In or about August 2009, Munroe created a blog entitled *Where are we going, and why are we in this handbasket?*

13.    Munroe's blog was intended as a vehicle to keep in touch with friends. In her blog, Munroe discussed such mundane topics as her favorite restaurants, family trips, and her work experiences.

14.    Munroe intended for the blog to be anonymous, except as to her friends who she invited to be blog "followers." Thus, she blogged under the name "Natalie M" and she avoided

making any reference to the locations where she lived and worked, the names of her students, and the name of the school where she taught.

15.     In February 2011, when the blog came under scrutiny by the School District, the blog had merely nine (9) followers, two of whom were Munroe and her husband.

16.     Munroe published 84 blog entries between August 9, 2009 and November 25, 2010, most of which had nothing to do with her school or work.

17.     At no time during this period did the School District have any policy restricting an employee's ability to maintain a blog.

18.     At all times, Munroe's activity in blogging was undertaken as a private citizen.

19.     Therefore, Munroe's blogging activity was protected under the First Amendment of the United States Constitution.

20.     On February 9, 2011, defendant Lucabaugh asked to meet with Munroe. At that time, he showed Munroe several printed copies of her blog entries and asked her whether she was the author of them. Among the blog entries in questions, were entries in which Munroe made comments about her students' unwillingness to work hard and cooperate in school, lack of student accountability, and the lack of support for teachers shown by school administrators and parents.

21.     Munroe acknowledged to Lucabaugh that she had authored the blogs.

22.     In retaliation for Munroe's protected free speech in publishing her blog:

    a.     Lucabaugh instructed Munroe to gather her belongings, whereupon she was escorted from the building by Lucabaugh and a school security guard; and

    b.     defendants immediately suspended Munroe from her job.

23.     Later that day, and in the weeks that followed, Munroe's blog became the subject

4

of local, national, and international press coverage, in print, as well as on radio and television.

24.     Defendants Laws and Lucabaugh were reported in the press as having stated that Munroe was suspended, and would likely be fired, for having made "egregious" statements about students in her blog.

25.     Munroe defended herself and her conduct in her blog, as well as in the media.

26.     In February 2011, Munroe appeared on CBS, ABC, NBC, CNN, Fox News, and other television stations; and Munroe gave interviews to Time Magazine, Reuters, the Associated Press, the Philadelphia Inquirer and other print news sources.

27.     In each appearance and interview, Munroe defended her blog entries, refused to apologize for the comments made on her blog, and attempted to focus attention on the education debate, pointing out that school administrators and government official often fail to support teachers, choosing instead to placate unreasonable parents and unmotivated students, and thereby undermining the educational system.

28.     At all times, Munroe's activities in continuing to blog, as well as in speaking to the media, were undertaken as a private citizen. Accordingly, these activities were protected under the First Amendment of the United States Constitution.

29.     In retaliation for Munroe's protected free speech:

a.     In June 2011, Munroe was given a retaliatory and false unsatisfactory performance evaluation by defendant Lucabaugh. Lucabaugh predicated his unsatisfactory evaluation on Munroe's protected blogging activity, stating "Teacher failed to exhibit acceptable and professional language on an internet blog."

b.     defendants refused to grant Munroe's requests for a transfer to another school in the School District.

5

      c.      On August 3, 2011, defendants held a press conference in which defendant Lucabaugh stated, "Despite the fact that Mrs. Munroe retains legal employment rights, I would hope that none of us lose sight of the real issue. The real issue is that while something may be legally right, it may not be ethically or morally right. There are consequences that occur when a person chooses to exercise her rights and say outrageous, disrespectful, vulgar and cruel things about other people . . . especially when it's a teacher saying terrible things. . . ."

      d.      In August 2011, defendants informed School District residents that they would honor all requests of students to "opt out" of Munroe's classes.

      e.      In September 2011, defendants placed Munroe on a performance "improvement plan" allegedly necessitated by the retaliatory and false unsatisfactory performance evaluation.

      f.      Commencing in October 2011, defendants began retaliatory, unannounced observations of Munroe's classes. Following the unannounced evaluations, defendants would subject Munroe's classroom efforts to ridiculous and overly critical evaluations, routinely concluding that lessons which Munroe had been teaching for years were unsatisfactory.

      g.      On October 12, 2011, defendant Lucabaugh sent Munroe a retaliatory disciplinary email calling her unprofessional for briefly leaving her classroom to use the restroom while her students were quietly reading. Munroe was singled out for this discipline while other teachers who used the restroom in this fashion were not disciplined.

      h.      On or about October 28, 2011, allegedly on the basis of four unsatisfactory classroom evaluations, defendants instructed Munroe to begin submitting daily lesson plans using a template designed by the School District. The sole purpose of this requirement was to retaliate against Munroe for her protected free speech. Indeed, other teachers were not required

6

to submit daily lesson plans. Moreover, defendants knew that it would be difficult, if not impossible, for Munroe to comply with this instruction because of the time and effort that is required to prepare a lesson plan using the School District's template. Additionally, Munroe had already made her existing lesson plans, in the format that she had been using for years, available to School District evaluators.

        i.      Throughout the fall semester of 2011, defendants continuously created a harassing and hostile work environment for Munroe, undermining her ability to teach by repeatedly observing her classroom, requiring Munroe to make unnecessary changes to her lesson plans, and requiring her to attend multiple, lengthy meetings wherein she was subjected to retaliatory, negative evaluations. Defendants' conduct in this regard was transparently obvious – they were hoping to make Munroe's job so difficult that she would quit.

        j.      On January 20, 2012, defendants issued Munroe a retaliatory second unsatisfactory performance evaluation.

        k.      Throughout the spring semester of 2012, defendants continued to subject Munroe to retaliatory classroom evaluations, singling her out for ridiculous and untrue criticism at every opportunity. Munroe's colleagues began to refer to the treatment she was being subjected to as the administration's "spring push."

        l.      During this period, Munroe had multiple meeting with defendant Lucabaugh in which he refused remove the School District's requirement that Munroe submit daily lesson plans despite the fact that Munroe clearly articulated that it was impossible (because there were not enough hours in the day) for her to comply with this unreasonable instruction.

        m.      On June 1, 2012, defendants issued Munroe a retaliatory third unsatisfactory performance evaluation. At that time, Munroe was notified that defendant intend

7

to recommend the termination of her employment contract at the meeting of the Central Bucks

Board of School Directors scheduled for June 26, 2012.


### COUNT I
### 42 U.S.C. §1983
### Plaintiff vs. Defendants

30.     The averments contained in paragraphs 1 through 29 above are incorporated by

reference as though fully set forth herein.

31.     Under color of state law, defendants School District, Laws and Lucabaugh have

deprived Munroe of her First Amendment Constitutional rights by harassing and retaliating

against her as aforesaid.

32.     As a result of defendants' conduct, Munroe has suffered and will continue to

suffer monetary damages, including lost wages and benefits.

33.     As a result of defendants' conduct, Munroe has suffered emotional distress,

embarrassment, humiliation and damage to her reputation and earning capacity.

34.     The conduct of defendants Laws and Lucabaugh is extreme and outrageous

thereby justifying the imposition of punitive damages.

**WHEREFORE,** Plaintiff Natalie Munroe respectfully requests that this Honorable

Court:

a.     Enter an Order reinstating Munroe to her employment with School District

with full benefits and emoluments of employment retroactive to the date of her termination.

b.     Award Munroe backpay, front pay, compensatory damages and such other

monetary damages as Munroe proves at trial.

c.     Award Munroe punitive damages against defendants Laws and Lucabaugh

8

d.      Award Munroe her costs, including expert witness fees and reasonable
attorney's fees.

e.      Grant such other relief as the Court deems just and proper.

Date: June 20, 2012

_____
STANLEY B. CHEIKEN, ESQUIRE

The Pavilion – Suite 503
261 Old York Road
Jenkintown, PA 19046
(215) 572-8600

Date: June 20, 2012

_____
STEVEN L. ROVNER, ESQUIRE

ROVNER, ALLEN, ROVNER, ZIMMERMAN & NASH
175 Bustleton Pike
Feasterville, PA 19053
(215) 698-1800

*Attorneys for Natalie Munroe*

9